JOHN C. HOPKINS v. C. H. LEWIS, Judge; ED. MURPHY v. The Same; HENRY MEILKE v. The Same; JOHN SETZER v. The Same; BARNEY WALKER v. The Same; DENNIS DWYER v. The Same; and GEO. COMMON v. The Same.

Intoxicating Liquors: INTERSTATE COMMERCE: ORIGINAL PACKAGES. Where intoxicating liquors, imported from a foreign state, were sold over a bar by the bottle, the purchaser being permitted to open the same upon the premises, and was supplied by the vendor with a glass from which to drink the same, and the bottles were retained by the vendor, held, that there was not a sale in the original packages within the meaning of the law pertaining to commerce between the states.

*Appeal from Woodbury District Court.*—HON. C. H. LEWIS, Judge.

WEDNESDAY, FEBRUARY 10, 1892.

THE above-entitled causes are proceedings in *certiorari* by which the plaintiffs complained of orders made by Hon. C. H. Lewis, as district judge, by which the plaintiffs were held to be in contempt for violating injunctions restraining them from the unlawful sale of intoxicating liquors. Each of the plaintiffs was adjudged to pay a fine of five hundred dollars.— *Affirmed.*

*Argo*, *McDuffie & Argo*, for plaintiff, Dennis Dwyer.

*Lynn & Sullivan*, for other plaintiffs.

*Carter & Brown*, for defendant.

ROTHROCK, J.—The cause of John C. Hopkins was abstracted, argued and submitted in this court with a stipulation that all of the other cases should be submitted upon the same record; the evidence being substantially the same in all the cases. The plaintiffs claim that they were not guilty of contempt, because they made no illegal sales. They insist that they were the keepers of what was known as "original package establishments;" that they sold intoxicating liquors in original packages, which packages were shipped into this state from other states. In other words, the claim is made that the sales in question were authorized under the case of *Leisy v. Hardin*, 135 U. S. 100, 10 Sup. Ct Rep. 681. All of the sales were made before the recent act of congress known as the "Wilson Bill," relating to the laws of the several states pertaining to the traffic in intoxicating liquors. The plaintiffs rely upon the case of *Collins v. Hills*, 77 Iowa, 181, in which an original package is defined by this court. Whatever may be thought of the correctness of that definition, it would be a hardship to now hold that it was wrong, because parties were authorized thereby to act in accordance therewith. It is a question of no importance now, in view of the act of congress above referred to.

But the evidence in these cases shows that the sales in question were not made in accordance with the rule in the case of *Collins v. Hills*. They were not the keepers of original package houses. They kept saloons with bars and other saloon fixtures and appliances. The following is the testimony of one of the witnesses taken on the trial: "I know a certain place situated upon the northwest corner of Fifth and Pearl streets, occupied by the defendant Hopkins. I was

there on the tenth day of June, and bought a bottle of beer. At the time I bought the beer Mr. Frank Roberts was with me, and we together drank this beer there at the time. The place where we got this beer was furnished up as an original package saloon. There was a bar and other saloon fixtures and appliances there. There was a shelf back of the bar, and sample bottles on it, and drinking glasses. The beer was cold. We paid for the beer after we drank it. We purchased also a package of whisky. This beer we bought was lager-beer, and both the beer and whisky were intoxicating. Mr. Frank Roberts and myself were there on the twenty-eighth of June, and bought a bottle of beer. We saw the defendant there on both occasions. The defendant Hopkins set up the bottle of beer we called for, and said we would have to put up for it before we drank it, as that was the law. Roberts asked him if he could have the bottle, and he said, 'Yes,' but would have to charge him a nickel for it. This was after drinking. We didn't buy the bottle, and defendant took it and put it away." Cross-examination: "The bottle of beer we purchased on the tenth of June was sealed. It had a tinfoil and wire over the top. So far as we could judge from its appearance, it had not been opened at all. We opened it. The whiskey had not been opened that we knew of. We didn't have possession of the bottle. We set it on the counter. We had to pull the cork out. We didn't try to carry it off. All the liquor that we ever bought there was in bottles, sealed; and to all appearances they had never been broken." Redirect examination: "There was no seal on the bottle of whiskey that we purchased there, any more than an ordinary cork in the bottle. There was a paster on there which read: 'Bottled by William Darst, Omaha, Neb.'" It was agreed that the testimony of Frank Roberts is substantially the same as that above set out. This testimony is in no manner contradicted, except that the plaintiff Hopkins testified as follows: "I heard the testimony of

the last witness in regard to the bottles. After a customer comes in and buys a bottle he leaves it on the counter after he empties it, and I take it and set it on the back of the bar. I own the bottle. I have never prevented a customer from taking it if he desires to. I charge no more where the bottle is taken away than when it is left. Every bottle that we get we get labels on. Those bottles were shipped in original packages, and none have been received while we were in business that were not labeled." It thus appears that the plaintiffs did not sell the packages. They sold the contents. The devise of requiring the purchaser to pull the corks from the bottles is of no consequence. The fact remains that it was the liquor, as emptied from the original packages into drinking glasses furnished by the plaintiffs, upon a counter in a saloon, which was sold. The cases of *Leisy v. Hardin* and *Collins v. Hills* were wholly unlike these cases. In those cases the sellers were not the keepers of dramshops. They sold original packages and not the mere contents of the packages.

The evidence further shows that the beer which the plaintiffs sold was claimed to be imported from Covington, Neb. to Sioux City, where the plaintiffs carried on the business. There is much in the evidence tending to show that the shipping of the beer across the Missouri river was a mere device, and that it was not interstate commerce, as understood in the way of trade. The parties owning the beer, and from whom the plaintiffs made their purchases, were in business in Sioux City, and the beer was ordered there, and it was brought over the river, as ordered, in the wagons of a transfer or transportation company, in which the wholesale dealers were interested as owners.

We think that the plaintiffs did not show by a preponderance of the evidence that the sales were made by original packages. The orders of the district court will be AFFIRMED.